Robins Kaplan LLP
Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:    650 784 4040
Facsimile:    650 784 4041

Epps Holloway DeLoach & Hoipkemier, LLC
Adam L. Hoipkemier *[Pro Hac Vice Application to Be Filed])*
adam@ehdhlaw.com
Kevin E. Epps *[Pro Hac Vice Application to Be Filed]*
kevin@ehdhlaw.com
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677
Telephone:    706 508 4000
Facsimile:    706 842 6750

*Attorneys for Plaintiff and Proposed Class*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| RENEE OLACHEA, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>STEARNS LENDING, LLC,<br><br>          Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW AND BREACH OF CONTRACT**<br><br>**CLASS ACTION** |

# TABLE OF CONTENTS

Summary ......................................................................................................... 1

Parties ........................................................................................................... 2

Jurisdiction ..................................................................................................... 2

Fact Allegations ............................................................................................. 3

    A.    Borrowers Pay For and the FHA Supplies Mortgage Insurance to Lenders........... 3

    B.    The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form. ....................................................................................................... 3

    C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans. ...................................................................... 8

    D.    Stearns Did Not Provide A FHA or HUD-Approved Disclosure To Plaintiff Before Collecting Post-Payment Interest.................................. 10

Class Action Allegations.............................................................................. 12

FIRST CAUSE OF ACTION (Violation of Unfair Competition Law - Unlawful and Unfair Business Practice).......................................................... 15

SECOND CAUSE OF ACTION (Breach of Contract) ................................ 16

Relief Requested ......................................................................................... 17

## Summary

1.     Defendant Stearns Lending, LLC ("Stearns") has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the FHA regulations governing these loans.   As a result, Stearns has collected post-payment interest in an unlawful manner. Through this action, Plaintiff seeks to recover restitution for those class members already injured by Stearns and injunctive relief barring such conduct in the future.

2.     Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan.   For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3.     HUD regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the** [**FHA**]."   24 C.F.R. § 203.558 (c) (2014) (emphasis added).

4.     HUD requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges.   *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C).

5.     A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans.   Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "to the extent . . . permitted by [FHA] regulations."   Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as Exhibit 1, at 2.

6.     Although both the uniform provisions of the note, HUD handbooks, and HUD regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with a HUD-approved form, Stearns does not use the approved form attached to HUD handbook 4330.1 or the "Payoff Procedure Disclosure Form" hyperlinked in HUD handbook 4000.1. Instead, Stearns uses its own unauthorized form, which is not approved by HUD and does not

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

fairly disclose the terms under which Stearns can collect post-payment interest or properly explain how borrowers can avoid such charges.

7.   Because Stearns does not use a HUD-approved form as required by both the uniform provisions of the note, the HUD handbooks and HUD regulations, Stearns has no right to collect post-payment interest from borrowers.  Yet, Stearns has unlawfully collected post-payment interest from Plaintiff and the class of California borrowers of FHA-insured loans.  Through this class action, Plaintiff seeks to recover restitution for those class members.

## Parties

8.   Plaintiff Renee Olachea ("Plaintiff" or "Olachea") is a citizen of California, residing in Fontana, California.  In May 2015, Olachea paid off an FHA-insured loan held by Defendant Stearns Lending, LLC.

9.   Defendant Stearns Lending, LLC is a California-based mortgage company.  Stearns held FHA-insured loans for Plaintiff and other class members.  These loans have been paid off in full.

10.   Stearn's main office is located at 4 Hutton Centre Drive, 10th Floor, Santa Ana, California 92707.  Thus, Stearns is a citizen of California.

## Jurisdiction

11.   This Court has subject matter jurisdiction over this class action.  Many putative class members are citizens of states different than Stearns.  *See* 28 U.S.C. § 1332 (d) (2).  Upon information and belief, the claims of the class in the aggregate exceed the minimally required amount in controversy.  *See* 28 U.S.C. § 1332 (d) (6).

12.   This Court has personal jurisdiction over Stearns.  Among other things, Stearns is registered to and does conduct business in California, holds mortgages on real property in California, has caused injuries in California, and generally engages in substantial activity in California.

13.   Stearns can be served through its registered agent, which is CT Corporation System, located at 818 W 7th Street, Suite 930, Los Angeles, California 90017.

14.   This Court is also a proper venue for this action because Stearn's principle office is located in Orange County.

### Fact Allegations

**A.    Borrowers Pay For and the FHA Supplies Mortgage Insurance to Lenders.**

15.    Department of Housing and Urban Development is a department within the executive branch of the United States government.   HUD was established in 1965 by the Department of Housing and Urban Development Act.  *See* 42 U.S.C. § 3532.  Federal Housing Administration was established in 1934 by the National Housing Act of 1934.  *See* 12 U.S.C. § 1701.  When HUD was created, Congress re-organized the FHA as an agency within HUD.

16.    Among other things, the FHA provides mortgage insurance to HUD-approved lenders for loans on single-family homes.   *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.  The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes.  *Id.*

17.    Mortgage insurance protects lenders against losses that are caused by borrower defaults.  The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.  *Id.*  In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

18.    To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.  Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.  Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.  As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

**B.    The FHA Prohibits Lenders From Collecting Post-Payment Interest On FHA-Insured Loans, Unless They First Provide The FHA-Approved Form.**

19.    One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

2.    BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the order of Lender.  **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent (_____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis altered).

20.     Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues. Understandably, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

21.     In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Department of Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

22.     However, for nearly thirty years, the FHA maintained a policy different from the other government agencies.  For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

23.     This type of interest is often referred to as "post-payment" interest.  Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed.  The lender is penalizing the borrower for paying the loan before the maturity date.

24.     Although the FHA permits lenders to collect post-payment interest, the FHA has imposed strict limitations on the lender's ability to do so.  The FHA prohibits lenders from collecting post-payment interest unless the lender complies with FHA regulations.  And the FHA regulations require the lender to provide the borrower with the HUD-approved disclosure form.

25.     The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

5.      BORROWER'S RIGHT TO PREPAY
**Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**. Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis altered) at 2.[1]

26.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

27.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

> (a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.
> . . .
> (c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.
> . . .
> (e) If the [lender] **fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture** of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

28.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the HUD-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

29.     For convenience of lenders, for mortgages insured on or after August 2, 1985 and through January 20, 2015, the HUD included an approved form as Appendix 8 (C) to the HUD Housing Handbook:

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in

---

[1] Plaintiff' notes are fixed rate notes, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA adjustable rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 6.  There is no difference in the relevant language.

full)

Mortgagor: _____   Date: _____
Address: _____   Loan #: _____
_____   FHA#: _____

This is in reply to your _____ (date) _____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

The _____ (mortgagee name) _____ will:

(a)   [ ]   accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)   [ ]   only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

_____

NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

If you have any questions regarding this notice, please contact _____ (name and/or department) ____at___ (telephone number) ___.


_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

30.   As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains to the [borrower's] rights under the mortgage."  HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2, attached as Exhibit 2.

31.   HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been

determined.  **Otherwise, the [lender] must forfeit any interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

32.     In May 2016, HUD Handbook 4000.1 went into effect and reiterates the requirement that lenders must provide borrowers with an approved disclosure form as a condition to charging post-payment interest.

33.     For example, Handbook 4000.1 states that, "[w]hen notified of the Borrower's intent to prepay a Mortgage, the Mortgagee **must** send to the Borrower directly the **Payoff Disclosure** and copy of the payoff statement." The Payoff Procedure Disclosure Form is found on HUD's forms webpage and is hyperlinked in the handbook. The handbook also states "this option [*i.e.,* post-payment interest] may **only** be used if the Mortgagee has provided the Payoff Disclosure to the Borrower."

34.     The handbook also states "this option [*i.e.*, post-payment interest] may **only** be used **if the Mortgagee has provided the Payoff Disclosure to the Borrower**."  Section III.A.1.e.v. (C)(2)(a). The relevant sections of the Handbook 4000.1 addressing the Payoff Disclosure are attached as Exhibit 3.

35.     HUD makes a document titled "Prepayment Disclosure Statements" available on its website:  https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_documents.  The Payoff Disclosure is attached as Exhibit 4.

36.     HUD Handbook 4000.1 contains the hyperlinked words "Payoff Disclosure," which is linked to the Handbook's "Supplemental Documents" website, which contains a link to the page with the model form "Prepayment Disclosure Statements."

37.     Likewise, a Frequently Asked Questions page linked from and accessible through the HUD website contains the question "Is there a current Payoff Procedure Disclosure for FHA Loans?"

38.     The answer to the FAQ is: "Yes, in response to a prepayment inquiry, request for payoff, or tender of prepayment in full, **mortgagees must use the Payoff Procedure Disclosure notice** provided on the Single Family Mortgages Model Documents webpage at: https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_documents

The specific link is at:

https://portal.hud.gov/hudportal/documents/huddoc?id=SFPayoffProcDisc.pdf"

39.     In sum, pursuant to the uniform provisions of the note the HUD Handbooks, and

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

HUD regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the HUD-approved form**.  If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

40.    From August 2, 1985 through January 20, 2015, lenders including Stearns have collected billions of dollars in post-payment interest.

41.    The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune,    Apr.    11,    2004,    http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers.   The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**."   *Id.* (emphasis added).

42.    "HUD doesn't get the interest, lenders do.  In effect, **lenders are getting interest for money that isn't outstanding**.  This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/ (emphasis added).

43.    "This practice . . . has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high."  Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell    or    Refinance*,    Washington    Post,    Sep.    5,    2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html (emphasis added).

44.    "[**T**]**he clear loser** in the full-month interest policy **is 'the one who can least**

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

**afford it, the consumer**."   Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added). "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

45.    Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors."  Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330 (emphasis added).

46.    All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

47.    On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties.  74 Fed. Reg. 43232, 43232 (Aug. 26, 2009).  The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.'  **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**."  *Id.* at 43257 (emphasis added).

48.    On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)."  *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).  Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due."  *Id.* at 6444.

49.    This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . .  In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**.  The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

50.     Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

51.     In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest."  79 Fed. Reg. 50835, 50835.  And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges."  *Id.*

52.     Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount."  24 C.F.R. § 203.558 (a).  "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date."  *Id.*

53.     Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive.  "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should."  Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.     Stearns Did Not Provide A FHA or HUD-Approved Disclosure To Plaintiff Before Collecting Post-Payment Interest.**

54.     Stearns was the holder of legal title to a mortgage secured by the Plaintiff's home located at 17561 Elaine Drive, Fontana, California.  Plaintiff's loan was insured by the FHA, and so Stearns is required to comply with FHA regulations with respect to their loan.

55.     Pursuant to FHA regulations, Plaintiff's promissory note contains certain uniform provisions found in the note for every FHA-insured loan. These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay." *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

56.     In or around May 2015, Plaintiff decided to refinance his loan with Stearns, and

requested that Stearns provide him with a payoff statement.

57.     Stearns provided a payoff statement dated May 11, 2015.  The statement is a form document, in which Stearns uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.  *See* Payoff Statement, From Stearns, to Plaintiff, attached as Exhibit 5, at 1.

58.     The statement contains the following specific numbers comprising the "TOTAL AMOUNT TO PAY IN FULL" Plaintiff's loan: "Current Total Unpaid Principal Balance $257,661.86"; "**Interest at 4.25000% [$] 1,823.80**"; "Pro Rata MIP" [$] 570.98 and "Recording Fee [$] 50.00." *Id.* (emphasis added).

59.     Plaintiff's interest payments were $912.55 per month.  Thus, by representing that Plaintiff owed $1,823.80 in interest, Stearns charged and sought to collect interest for **two months** – interest for the entire month of April and interest for the entire month of May, even though the payoff statement was issued on May 11, 2015.  *Id.*

60.     On May 21, 2015, Plaintiff paid Stearns $260,178.55, which includes the $1,823.80 in interest Stearns represented it was owed.  And because Stearns required Plaintiff to pay interest for the entire month of May – even though he paid the full unpaid principal on May 21, 2015 – Stearns collected post-payment interest.

61.     However, Stearns did not first provide Plaintiff with a HUD-approved form.

62.     For one thing, Stearns' form represents that "FUNDS PROCESSED **ON OR AFTER JUNE 1, 2015** WILL REQUIRE AN ADDITIONAL $ 912.55 IN INTEREST PER MONTH." (emphasis added).

63.     Section 203.558 required Stearns to disclose to the Plaintiff and other borrowers that they could **avoid post-payment interest entirely** by pre-paying their loan on the first day of the month.  Instead, Stearns falsely represented to Plaintiff that he would be required to pay an extra month of interest if his payment was processed on the first on the month.

64.     Stearns misrepresentation incorrectly led borrowers to believe that the first day of the month was the worst day of the month to prepay their loans, *i.e.* the payoff date that would incur the highest amount of post-payment interest, instead of a safe harbor from accruing post-payment interest at all.

65.     For another, appendix 8(c) to HUD Handbook 4330.1 rev-1 is nearly a page long, has a capitalized title (MORTGAGE NOTICE TO MORTGAGER (In response to prepayment

inquiry, request for payoff or tender of prepayment in full), four easy-to-read, distinct paragraphs labeled (a), (b), (c), and (d) with options of how interest will be charged, along with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom.

66. Similarly, the disclosure form appended to HUD Handbook 4000.1 is nearly a full page long, has a capitalized title (PAYOFF PROCEDURE DISCLOSURE), four easy-to-ready distinct paragraphs with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom, emphasizing the significance of the documents to the borrowers.

67. Stearns' unapproved form is nothing like Appendix 8(c) or the Payoff Procedure Disclosure Form.

68. Principally, Stearns' unauthorized form does not contain **any** of the post-payment disclosure language requested by FHA and HUD, or indeed, any language at all notifying borrowers that Stearns intended to collect interest through the end of the month after the loan was paid off and how to avoid the accrual of the interest. Stearns' form says at all nothing about how borrowers can avoid post-payment interest entirely. Besides falsely stating that an extra month interest was required if Plaintiff paid on the first of the month and failing to include other required information from the HUD-approved form, Stearns' form abbreviates the word "interest" as "int."

69. The effect of Stearns' illegal collection of post-payment interest is that Plaintiff was charged interest twice – by Stearns and their new lenders – for the period between the date of the closing and the end of the month.

## Class Action Allegations

70. Plaintiff asserts claims on behalf of himself and a class of similarly-situated persons pursuant to Rule 23 of the Federal Rules of Civil Procedure.

71. Plaintiff currently proposes the following classes:

**California UCL Class:**

Any person who had an FHA-insured loan secured by real property located in the State of California for which (i) the Date of the Note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) Stearns – as of the date the total amount due on the loan was brought to zero – was the Lender, Mortgagee, or otherwise held legal title to the Note; (iii) within the applicable statute of limitations Stearns collected interest for any period after the total amount due on the loan was brought to zero (i.e., Stearns collected "post-payment interest"); Plaintiff reserves

the right to change this definition.

**Breach of Contract Class:**

Any person who had an FHA-insured loan secured by real property located in the states of Florida, Georgia, Texas, Virginia, Iowa, or California for which (i) the Date of the Note is during a period beginning on June 1, 1996 and ending on January 20, 2015; (ii) Stearns – as of the date the total amount due on the loan was brought to zero – was the Lender, Mortgagee, or otherwise held legal title to the Note; and (iii) within the applicable statute of limitations, Stearns collected interest for any period after the total amount due on the loan was brought to zero (i.e., Stearns collected "post-payment interest"). Plaintiff reserves the right to change this definition.

72.     Plaintiff proposes certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue.

73.     Plaintiff would serve as the class representative.

74.     Plaintiff satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure:

    a.     <u>Numerosity</u> – The class is so numerous that joinder is impracticable. The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes. Plaintiff estimates that the class consists of thousands of persons.

    b.     <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

        i.     Whether, before collecting post-payment interest, Stearns complied with the contractually-incorporated HUD regulation requiring that it provide the borrowers with an approved disclosure.

        ii.     Whether and when Stearns knew that it failed to make required disclosures relating to post-payment interest.

        iii.     Whether Stearns breached the note by collecting post-payment interest to which it was not entitled.

        iv.     Whether Stearns engaged in unlawful or unfair business practices

with respect to the collection of post-payment interest.

   v.   Whether Stearns' conduct violated the note, regulations. Business & Professional Code § 17200, *et. seq.,* Business & Professions Code § 17500 and the common law of unjust enrichment.

   vi.   Whether Plaintiff and Class Members are entitled to restitution.

   vii.   Whether Plaintiff and Class Members are entitled to damages.

   viii.   Whether Plaintiff and Class Members are entitled to equitable relief and if so, the nature of the relief.

c.   <u>Typicality</u> – Plaintiff's claims are typical of the classes' claims.  Plaintiff's promissory note is not just typical of the rest of the class, but is identical with respect to the relevant provisions at issue in this case.  Further, because Stearns uses form payoff statements, Plaintiff has been subject to conduct that is typical of the rest of the class.  Stearns has sought to collect post-payment interest from Plaintiff in the same manner that it has sought to collect post-payment interest from the rest of the class.

d.   <u>Adequacy</u> – Plaintiff would adequately protect the class's interests. Plaintiff has a genuine interest in protecting the rights of the class and Plaintiff's counsel is experienced in handling complex class actions. Indeed, Plaintiff's counsel have been designated and approved as class counsel in numerous state and federal courts, including in actions obtaining recovery of post-payment interest charges.   Further, because Plaintiff challenges form payoff statements used by Stearns, the interests of Plaintiff and the class are aligned.

e.   <u>There is a well</u>-defined community of interest among Class members, and the disposition of the claims of these Class members in a single action will provide substantial benefits to all parties and to the Court.

f.   <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class.  If Plaintiff establishes that Stearns' practice of collecting post-payment interest without making the approved disclosure required under the note and HUD regulations violates the UCL, it will establish liability for all class members, without the need for any

additional proof as to liability.   Thus, common issues predominate over individual issues.

g.     Superiority – A class action is superior to other available remedies.   The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action.   Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiff and other class members to obtain redress.   Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class.   Requiring thousands of class members to individually litigate their claims over and over again in various courts would be vastly inefficient.   It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

**FIRST CAUSE OF ACTION**

**(Violation of California Unfair Competition Law – Unlawful and Unfair Business Practice)**

75.     Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

76.     California Business & Professions Code § 17200, *et seq.* prohibits acts of unfair competition, which include, without limitation, unlawful and unfair business practices, each of which is separately actionable.

77.     Stearns acted unlawfully and unfairly by collecting post-payment interest payments without first disclosing the charges and how to avoid them to Plaintiff and Class members in a form approved by HUD.   Not only did Stearns did fail to disclose required information, it affirmatively misrepresented that an extra month of interest would be required if Plaintiff and Class members prepaid their loans on the first day of the month.

78.     Stearn's practice was unlawful in that it violated 24 C.F.R. § 203.558 and the note.

79.     The practice was unfair in that it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. The financial injury to consumers by Defendant's conduct greatly outweighs any alleged countervailing benefit.

80.     The injury to consumers by Defendant's conduct is not an injury that consumers themselves could reasonable have avoided because of Defendant's omission of material fact.

81.     Plaintiff suffered an injury-in-fact from Stearns' unlawful and unfair conduct in the

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

form of paying interest that they were not required to pay under HUD regulations or their contracts.

82. Stearns' unlawful and unfair conduct caused Plaintiff and Class members harm.

83. Plaintiff and Class members would not have paid, and would not have agreed to pay, post-payment interest had Stearns properly disclosed the interest charges in response to their requests for payoff. Instead, they would have scheduled the closing of their refinance for the last business day of the month or the first business day of the following month.

84. To this day, Defendant has engaged and continues to engage in unlawful and unfair business practices by keeping the interest it unlawfully and unfairly collected and failing to inform Plaintiff and Class members of its illegal practices.

85. As a direct and proximate cause of Defendant's unlawful and unfair practices, Plaintiff and Class members have suffered actual damages in that they have paid interest that they did not owe.

86. As a proximate result of its unlawful and unfair practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiff and Class members pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

### SECOND CAUSE OF ACTION

### (Breach of Contract)

87. Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

88. Plaintiff had a contract with Stearns.  The terms of the contract are set forth in the promissory note between Plaintiff and Stearns.  The note is a form contract containing certain provisions that are identical to provisions found in the promissory notes for every FHA-insured loan.

89. In Section 2 of the note, titled "BORROWER'S PROMISE TO PAY; INTEREST," Stearns agreed that "[i]nterest will be charged on unpaid principal" and only "until the full amount of the principal has been paid."  Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1.

90. In section 5 of the note, titled "BORROWER'S RIGHT TO PREPAY," Stearns agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . permitted by regulations of the Secretary."  Id. at 2.

91. And the relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]xcept as set out [in this regulation], monthly interest on debt must be calculated on the actual

unpaid principal balance of the loan." 24 C.F.R. § 203.558 (2014).  "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but only if [the lender] so advises the [borrower], in a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment." Id.

92.   In addition to the express terms of the promissory note between Plaintiff and Stearns, the law also implies a duty of good faith and fair dealing in every contract, and Stearns is subject to this duty as well.

93.   Stearns breached the contract, including the duty of good faith and fair dealing, by collecting post-closing interest payments from Plaintiff without first providing him with FHA-approved notice in response to his inquiry, request for payoff figures, or tender of prepayment.

94.   Plaintiff was damaged by Stearn's breach, and he seeks damages for Stearn's improper collection of post-closing interest payments.  Plaintiff seeks damages for interest collected for the period beyond the date Stearns received full repayment of the unpaid principal.

**Relief Requested**

Plaintiff asks this Court to:

a.    certify this action as a class action, including certifying Plaintiff as class representative and undersigned counsel as class counsel;

b.    grant judgment as a matter of law in favor of Plaintiff and the class on any or all issues or, in the alternative, hold a jury trial to decide any disputed fact questions;

c.    award Plaintiff and class members any restitution, damages, and other relief they are entitled to, including but not limited to, return of any post-payment interest collected, statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

d.    enjoin Stearns from continuing the unlawful practices set forth here;

e.    and order any other relief as the Court may deem proper and just.

1    DATED:  October 5, 2017                **ROBINS KAPLAN LLP**

2
                                            By:  _____/s/ Michael F. Ram_____
3                                                 Michael F. Ram (SBN 104805)
                                                  Susan S. Brown (SBN 287986)
4
                                            2440 West El Camino Real
5                                           Suite 100
                                            Mountain View, CA 94040
6                                           Telephone:  650 784 4040
                                            Facsimile:  650 784 4041
7                                           mram@robinskaplan.com
                                            sbrown@robinskaplan.com
8
9                                           **EPPS, HOLLOWAY, DELOACH**
                                            **& HOIPKEMIER, LLC**
10
                                            Adam Hoipkemier (GABN 745811)
11                                          Kevin Epps (GABN 785511)
                                            1220 Langford Drive
12                                          Building 200-101
                                            Watkinsville, GA 30677
13                                          Telephone:  706 508 4000
                                            Facsimile:  706 842 6750
14                                          adam@ehdhlaw.com
                                            kevin@ehdhlaw.com
15
                                            (*Pro Hac Vice Applications to be Filed*)
16
                                            *Attorneys for Plaintiff and the Proposed Class*
17
18
19
20
21
22
23
24
25
26
27
28

Class Action Complaint for Violation of California Unfair Competition Law and Breach of Contract

Exhibit 1

Loan Number: ███████

# NOTE

┌─────────────────────────────────────┐
│ FHA Case No.                         │
│ ███████████████                      │
└─────────────────────────────────────┘

████████████████          ██████████          GEORGIA
[Date]                    [City]               [State]

████████████████████████████████████████████████████
[Property Address]

## 1. PARTIES

**"Borrower"** means each person signing at the end of this Note, and the person's successors and assigns. **"Lender"** means ████████████████████████████████████████ and its successors and assigns.
████████████████████████████████

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of ████████████████████████████████████████████ **Dollars (U.S. $** █████████████ ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of ████████████████████ percent ( ████████ %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

**(A) Time**

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on ████████████████████████████ . Any principal and interest remaining on the 1st day of ████████████████ , will be due on that date, which is called the "Maturity Date."

**(B) Place**

Payment shall be made at ████████████████████████████████ ████████████████
████████████████ , or at such other place as Lender may designate in writing by notice to Borrower.

**(C) Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ ████████████ . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5.  BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month.  Lender shall accept prepayment on other days provided that Borrower  pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary.  If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6.  BORROWER'S FAILURE TO PAY

### (A)  Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen  calendar days after the payment is due, Lender may collect a late charge in the amount of  FOUR AND 000/1000                          percent (       4.000 %) of the overdue amount of each payment.

### (B)  Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest.  Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default.  In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults.  This Note does not authorize acceleration when not permitted by HUD regulations.  As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C)  Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law.  Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7.  WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor.  "Presentment" means the right to require Lender to demand payment of amounts due.  "Notice of Dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that  must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at  a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by delivering it or by mailing it by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person  who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made  in

this Note.  Lender may enforce its rights under this Note against each person individually or against all signatories together.  Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

*[Sign Original Only]*

DocMagic *e*Forms  800-649-1362
www.docmagic.com

Exhibit 2

Page 1 of 29/94

    4330.1 REV-5

    APPENDIX 8(B)

_____

[Instructions:  Lender may use either of these options in its notice.]

        (1)        Otherwise, your prepayment will be refused until the next
                installment due date and interest will be charged to that date.

        (2)Otherwise, you may be required to pay interest on the amount
prepaid through the end of the month.

        If you have any questions regarding this notice, please contact
_____(name and/or department)_____ at {telephone number)_____.

                                        _____
                                        Mortgagee

_____

9/94                           Page 2 of 2

4330.1 REV-5

APPENDIX 8(C)
_____

                            MORTGAGEE NOTICE TO MORTGAGOR
                     (In response to prepayment inquiry, request
                    for payoff or tender of prepayment in full)

Mortgagor: _____    Date: _____
Address: _____    Loan#: _____
          _____    FHA#: _____

        This is in reply to your _____(date)_____ inquiry/request for payoff
figures or offer to tender an amount to prepay in full your FHA-insured
mortgage which this company is servicing.

        This notice is to advise you of the procedure which will be followed
to accomplish a full prepayment of your mortgage.

      The _____(mortgagee name) _____ will:

        (a)  [ ]  accept the full prepayment amount whenever it is paid and
              collect interest only to the date of that payment; or

        (b)  [ ]  only accept the prepayment on the first day of any month
              during the mortgage term; or accept the prepayment whenever
              tendered with interest paid to the first day of the month
              following the date prepayment is received

        (c)  [ ]  require at least 30 days prior written notice of your intent
to prepay the mortgage (for mortgagee insured prior to

August 2, 1985).  We consider that the 30-day written notice
has not yet been complied with.  NOTICE MUST BE IN WRITING.

        (d)  [ ]  consider that we have received notice of your intended
prepayment and the 30-day notice began to run on
_____(date)_____.

_____

Page 1 of 29/94

      4330.1 REV-5

      APPENDIX 8(C)

_____

        NOTE:It is to your advantage to arrange closings so that the
prepayment reaches us on or before (as close to the end of
the month as possible) the first work day of the month.

        If you have any questions regarding this notice, please contact
____(name and/or department)_____ at ____(telephone number)_____.


_____


Mortgagee

Attachment (Pay off Statement)

_____

9/94                   Page 2 of 2

Exhibit 3

### (C) Prepayment Procedures

#### (1) Mortgages Closed On or After January 21, 2015

The Mortgagee must accept a prepayment on a Mortgage closed on or after January 21, 2015, at any time and in any amount. The Mortgagee must calculate the interest as of the date the prepayment is received, not as of the next Installment Due Date.

#### (2) Mortgages Closed Before January 21, 2015

##### (a) Mortgages Insured On or After August 2, 1985

The Mortgagee must accept a prepayment on a Mortgage insured on or after August 2, 1985 and closed before January 21, 2015, if the Borrower prepays the Mortgage in full on the first Day of any month in the term of the Mortgage.

If prepayment is offered on a day other than the Installment Due Date, the Mortgagee may:
- refuse to accept the prepayment until the first Day of the next month; or
- accept the prepayment and require the payment of interest to the first Day of the next month. For Prepayment in Full, this option may only be used if the Mortgagee has provided the Payoff Disclosure to the Borrower.

##### (b) Mortgages Insured Prior to August 2, 1985

###### *(i)* Definitions

Notice of Intent to Prepay refers to the advance notice that Borrowers on Mortgages insured before August 2, 1985 must provide in order to prepay their FHA-insured Mortgages in full without penalty.

The 30-Day Advance Prepayment Notice Period refers to the time requirement for the Borrower to provide advance notice to the Mortgagee for prepayment of an FHA-insured Mortgage insured prior to August 2, 1985.

###### *(ii)* Standard

The Mortgagee must accept prepayment on a Mortgage insured prior to August 2, 1985, if the Borrower:
- submits to the Mortgagee a Notice of Intent to Prepay at least 30 Days prior to the prepayment; and

Case 8:17-cv-01741-JVS-KES   Document 1   Filed 10/05/17   Page 30 of 39   Page ID #:30

III. SERVICING AND LOSS MITIGATION
A.   Title II Insured Housing Programs Forward Mortgages
1.    Servicing of FHA-Insured Mortgages

- prepays the Mortgage in full on the first Day of any month in the term of the Mortgage.

If a prepayment is offered on a day other than the Installment Due Date, the Mortgagee may:

- refuse to accept the prepayment until the first Day of the month following the expiration of the 30-Day Advance Prepayment Notice Period; or
- accept prepayment and require the payment of interest to the first Day of the month following the expiration of the 30-Day Advance Prepayment Notice Period. For Prepayment in Full, this option may only be used if the Mortgagee has provided the Payoff Disclosure to the Borrower.

### *(iii)* Borrower's Notice of Intent to Prepay

For Mortgages insured prior to August 2, 1985, the Borrower must send and the Mortgagee must receive the Borrower's Notice of Intent to Prepay at least 30 Days prior to prepayment.

If the Borrower submits a prepayment without previously sending a Borrower's Notice of Intent to Prepay, the Mortgagee may consider receipt of the prepayment as the Borrower's Notice of Intent to Prepay. The Mortgagee may choose to:

- provide a Payoff Disclosure, enabling the Mortgagee to:
  - defer acceptance of prepayment until the first Day of the month following the date prepayment is tendered; or
  - accept the prepayment and require the payment of interest to the first Day of the month following the date prepayment is tendered; or
- accept the prepayment on the date tendered, which limits the Mortgagee's collection of interest to that prepayment date.

### *(iv)* Effective Dates for Notice of Intent to Prepay

The effective date of the Notice of Intent to Prepay is the date that the Notice was received by the Mortgagee, unless the Borrower can produce documentation showing that the Notice was received earlier. The 30-Day Advance Prepayment Notice Period required for Mortgages insured prior to August 2, 1985, begins on this date of receipt.

### (c)  Installment Due Date Falls on a Non-Business Day

When the Installment Due Date falls on a non-business day, the Mortgagee must consider a Borrower's Notice of Intent to Prepay or the receipt of the

Case 8:17-cv-01741-JVS-KES   Document 1   Filed 10/05/17   Page 31 of 39   Page ID #:31

III. SERVICING AND LOSS MITIGATION
A.  Title II Insured Housing Programs Forward Mortgages
1.  Servicing of FHA-Insured Mortgages

prepayment amount for a Mortgage closed before January 21, 2015 timely if received on the next business day.

### (3) Payoff Disclosure Requirements

When notified of the Borrower's intent to prepay, the Mortgagee must send the Payoff Disclosure and copy of the payoff statement directly to the Borrower, even if the Mortgagee is dealing with an Authorized Third Party.

The Mortgagee will forfeit any interest collected after the date of prepayment if these disclosure requirements are not met.

### (D) Trustee's Fee for Satisfactions

If specifically provided for in the security instrument, the Mortgagee may charge the Borrower the amount of the trustee's fee, plus any reasonable and customary fee for payment, or for the execution of a satisfaction, release or trustee's deed when the debt is paid in full.

### (E) Recording Fees for Satisfactions

The Mortgagee may charge the Borrower a reasonable and customary fee for recording satisfactions in states where recordation is not the responsibility of the Mortgagee.

## f.  Servicing Fees and Charges

### i.  Definition

Allowable Fees and Charges are those costs associated with the servicing of the Mortgage that are permitted to be charged to the Borrower.

Prohibited Fees and Charges are those costs associated with the servicing of the Mortgage that may not be charged to the Borrower.

### ii.  Standard

### (A) Reasonable and Customary Fees and Charges

The Mortgagee may collect certain reasonable and customary fees and charges from the Borrower after the Mortgage is insured and as authorized by HUD below. All fees must be:

- reasonable and customary for the local jurisdiction;
- based on actual cost of the work performed or actual out-of-pocket expenses and not a percentage of either the face amount or the unpaid principal balance of the Mortgage; and
- within the maximum amount allowed by HUD.

Exhibit 4

**PREPAYMENT DISCLOSURE STATEMENTS**

**Prepayment Disclosure Statement: Annual Disclosure Notice to Borrower for Mortgages Insured Before August 2, 1985**

Borrower: _____     Date: _____
Address: _____     Loan #: _____
_____     FHA #: _____

This notice is to advise you of requirements that must be followed to prepay your mortgage. This notice is also to advise you of requirements you must fulfill upon the prepayment of your mortgage to prevent the accrual of any interest after the date you prepay your mortgage.

The amount reflected below is the amount outstanding on the loan for prepayment of the indebtedness due under your mortgage. This amount is good through__[date]___. (The amount provided is subject to further accounting adjustments. Also, any corporate advances made by us or payments received from you before the stated expiration date on this notice will change your prepayment amount.)

[*The amount below reflects the amount outstanding under the mortgage, including principal, interest, penalties, late charges, advances, any other charges related to the loan, and any foreclosure or bankruptcy expenses incurred to date under the mortgage.*]

$_____ (Balance Due)

You may prepay your mortgage at any time without penalty. However, you are required to provide a written 30-day advance notice of prepayment. In order to avoid the accrual of interest on any prepayment after the date of prepayment, the prepayment must be received on the installment due date (the first day of the month). Otherwise, your prepayment will be refused until the next installment due date (the first of the month) and interest will be assessed up through that date.

If you have any questions regarding this notice, please contact [name and/or department] at [telephone number].

_____
Name of Mortgagee

**Prepayment Disclosure Statement: Annual Disclosure Notice to Borrower for Mortgages Insured on or after August 2, 1985, and Closed Before January 21, 2015**

Borrower: _____    Date: _____
Address: _____    Loan #: _____
_____    FHA #: _____

This notice is to advise you of requirements that must be followed to prepay your mortgage. This notice is also to advise you of requirements you must fulfill upon the prepayment of your mortgage to prevent the accrual of any interest after the date you prepay your mortgage.

The amount reflected below is the amount outstanding on the loan for prepayment of the indebtedness due under your mortgage. This amount is good through__[date]___. (The amount provided is subject to further accounting adjustments. Also, any corporate advances made by us or payments received from you before the stated expiration date on this notice will change your prepayment amount.)

[*The amount below reflects the amount outstanding under the mortgage, including principal, interest, penalties, late charges, advances, any other charges related to the loan, and any foreclosure or bankruptcy expenses incurred to date under the mortgage.*]

$_____ (Balance Due)

You may prepay your mortgage at any time without penalty. However, in order to avoid the accrual of interest on any prepayment after the date of prepayment, the prepayment must be received on the installment due date (the first day of the month). Otherwise, you may be required to pay interest on the amount pre-paid through the end of the month.

If you have any questions regarding this notice, please contact [name and/or department] at [telephone number].

_____
Name of Mortgagee

**Prepayment Disclosure Statement: Annual Disclosure Notice to Borrower for Mortgages Closed on or After January 21, 2015**

Borrower: _____    Date: _____
Address:  _____    Loan #: _____
          _____    FHA #: _____

This notice is to advise you of requirements that must be followed to prepay your mortgage.

The amount reflected below is the amount outstanding on the loan for prepayment of the indebtedness due under your mortgage. This amount is good through__[date]___. (The amount provided is subject to further accounting adjustments. Also, any corporate advances made by us or payments received from you before the stated expiration date on this notice will change your prepayment amount.)

[*The amount below reflects the amount outstanding under the mortgage, including principal, interest, penalties, late charges, advances, any other charges related to the loan, and any foreclosure or bankruptcy expenses incurred to date under the mortgage.*]

$_____ (Balance Due)

You may prepay your mortgage at any time without penalty. You will only be required to pay interest up to the date the prepayment is made.

If you have any questions regarding this notice, please contact [name and/or department] at [telephone number].

_____
Name of Mortgagee

June 2015

Exhibit 5

STEARNS LENDING, LLC
3637 SENTARA WAY
VIRGINIA BEACH, VA 23452          May 11, 2015
ATTN: PAYOFF DEPT                 PAYOFF STATEMENT—PAGE 1
BARRINGER ESCROW 1-714-975-5829

                                  LOAN #:  0011788304
                                  LOAN TYPE: FHA
Rene A Olachea                    PROPERTY ADDRESS:
Isabel D Olachea                          17561 Elaine Dr
17561 Elaine Dr                   Fontana CA 92336
Fontana          CA 92336
RE:
Rene A Olachea
Isabel D Olachea
17561 Elaine Dr
Fontana CA 92336
    ########################################################
        ONLY CASHIER'S CHECK, CERTIFIED CHECK, ATTORNEY'S TRUST
        CHECK OR WIRE TRANSFER WILL BE ACCEPTED FOR PAYOFF
    ########################################################

THESE FIGURES ARE DUE TO June 01, 2015
THIS LOAN IS DUE FOR THE May 01, 2015 PAYMENT
THE CURRENT TOTAL UNPAID PRINCIPAL BALANCE IS:  $     257,661.86
INTEREST AT  4.25000%                                  1,823.80
PRO RATA MIP                                             570.98
PROCESSING/RECORDING                                      50.00
###### TOTAL AMOUNT TO PAY IN FULL ######       $     260,106.64

FUNDS PROCESSED ON OR AFTER June 01, 2015 WILL REQUIRE AN ADDITIONAL
$ 912.55 INTEREST PER Month. FHA LOANS REQUIRE A FULL MONTHS INT.
THESE FIGURES WILL NO LONGER BE VALID IF THE LOAN IS NOT PAID
OFF DURING THE MONTH THAT THIS STATEMENT IS ISSUED.  IN THIS
CASE A NEW STATEMENT WILL BE REQUIRED.

THESE FIGURES ARE SUBJECT TO FINAL VERIFICATION.  FIGURES MAY BE
ADJUSTED IF ANY CHECK/MONEY ORDER IS REJECTED OR RETURNED NSF.

A CHARGE OF $15.00 MAY BE ASSESSED FOR AN UPDATE OF THIS PAYOFF
STATEMENT WITHIN 60 DAYS.

THE ESCROW BALANCE IS SUBJECT TO AUDIT AND MAY CHANGE DUE TO RECEIPTS
AND/OR DISBURSEMENTS FROM THE ACCOUNT PRIOR TO PAYMENT IN FULL.
THE CURRENT ESCROW BALANCE OF $ 411.02 WILL BE REFUNDED APPROXIMATELY
TEN BUSINESS DAYS AFTER THE RECEIPT OF PAYOFF.

ISSUANCE OF THIS STATEMENT DOES NOT SUSPEND THE CONTRACT REQUIREMENT
TO MAKE THE MORTGAGE PAYMENTS WHEN DUE.  A LATE CHARGE OF $ 71.91
WILL BE ASSESSED 15 DAYS AFTER A CURRENT PAYMENT IS DUE AND SHOULD
BE ADDED TO THE PAYOFF TOTAL IF RECEIVED AFTER THAT TIME.

IN ORDER TO EXPEDITE A RELEASE OF MORTGAGE, PLEASE INCLUDE ANY
RECORDING INFORMATION YOU MAY HAVE AVAILABLE. IF REQUESTED, THE DOCUMENTS
CAN BE SENT DIRECTLY TO THE CLOSING AGENT/ATTORNEY FOR RECORDING.  IF SO,
OUR FIRM WILL NOT COLLECT THE RECORDING FEE FROM THE CUSTOMER.
######SEE IMPORTANT INFORMATION ON PAGE TWO######

Fax Server 5/11/2015 9:06:55 AM PAGE 27/008 Fax Server

# IMPORTANT INFORMATION

**Fannie Mae HomeSavers Advance**
If you have a Fannie Mae HomeSavers Advance note it must be paid in full before selling your property. Please contact your HomeSavers Advance servicer for payoff information with respect to that loan. Payoff of the HomeSavers note is not required to release the first lien mortgage loan related to this payoff statement.

**Hope for Homeowners (H4H) Program**
If your loan was originated with the Hope for Homeowners (H4H) program or has had a partial claim recorded against your property, you must contact the U.S. Department of Housing and Urban Development (HUD) to obtain a payoff amount.

**Lien Release/Satisfaction/Reconveyance**
The lien release/satisfaction/reconveyance will be mailed directly to the county for recording after the payoff is posted to the account. Once received from the county, we will forward to the borrower at the last known address.

**Original Collateral Documents**
Original documents will be forwarded to the borrower at the last known address after the payoff funds have been applied.

**Payoff Information**
Payoff amount is subject to change due to any returned bank items and/or payments of any escrowed items, such as taxes, insurance and private mortgage insurance (PMI).

Payoff funds must be sufficient to cover all escrow advances, interest, prepayment penalties, principal, and fees. If additional funds are needed, we will notify you and we must receive these funds within two business days.

Interest will continue to accure. Payoffs that do not meet these requirements will be returned.

The principal balance reflected on the statement is based on the clearance of the last payment posted. The mortgagor will not stop payment on any funds remitted. If we receive notification to stop payment after the payoff, the loan will not be released until all funds are paid.

If your payments are automatically withdrawn by us or other services (bill pay, 3rd party, Internet banking, etc.), please cancel at least five business days before your next scheduled withdrawal date.

**Home Equity Line of Credit (HELOC)**
If you are paying off a HELOC, please be advised we require a written request signed by the borrower to close the credit line. Upon receipt of the correct and final payoff, and the fulfillment of all requirements under your loan agreement, the lien release will be processed and the credit line will be closed and no further draws against the account will be honored.

In the absence of strict compliance with the foregoing, any payment you make will be applied; however, the credit line will not be closed nor the lien released.

---

**Payoff Remittance Instructions**
Payoff funds must be made payable to your lender and mailed to either address listed below. Please note that all overnight mail must be sent to the physical address. We do not accept deliveries on Saturday, Sunday or holidays. Funds received in our office after 3 p.m. Eastern Standard Time (EST) will be processed the next business day.

**Overnight Address**
Attn: Payoff Department
3637 Sentara Way
Virginia Beach, VA 23452

**Mailing Address**
Attn: Payoff Department
Post Office Box 8068
Virginia Beach, VA 23450

**Wire transfers must be submitted as follows:**
Wells Fargo
420 Montgomery St.
San Francisco, CA 94104
Account Name: Collection Clearing Account
ABA#: 121000248
Account Number: 2000037424631
Attn: Payoff Department
Customer's Name
Loan Number

Fax Server 3/11/2015 9:00:55 AM PAGE 37/003 Fax Server

# DISCLAIMERS

## TEXAS LOANS ONLY:

TEXAS FINANCE CODE §343.106 REQUIRES PAYOFF STATEMENT CONTAIN CLOSING DATE AND DATE THROUGH WHICH PAYOFF AMOUNT IS VALID. THESE REQUIREMENTS CANNOT BE DELETED FROM PAYOFF STATEMENT.

TEXAS FINANCE CODE §343.106 REQUIRES THE IMPLEMENTING RULE TO ALLOW MORTGAGE SERVICERS AT LEAST SEVEN (7) BUSINESS DAYS FROM THE DATE OF RECEIPT OF PAYOFF REQUEST TO RESPOND TO A REQUEST MADE UNDER THE STATUTE.

ANY AMOUNT HELD IN ESCROW AT CLOSING WILL BE SETTLED IN ACCORDANCE WITH APPLICABLE FEDERAL LAW.

COMPLAINTS REGARDING THE SERVICING OF YOUR MORTGAGE SHOULD BE SENT TO THE DEPARTMENT OF SAVINGS AND MORTGAGE LENDING, 2601 NORTH LAMAR, SUITE 201, AUSTIN, TX 78705. A TOLL-FREE CONSUMER HOTLINE IS AVAILABLE AT 877.276.5550. A complaint form and instructions may be downloaded and printed from the department's website at www.sml.texas.gov or obtained from the department upon request by mail at the address above, by telephone or its toll-free consumer hotline listed above, or by email at smlinfo@sml.texas.gov.

## FHA LOANS:

Effective Jan. 21, 2015 any FHA loan originated on or after this date, interest will be collected through the date the mortgage is paid. If the FHA loan originated prior to this date, interest will be collected through the end of the month in which the mortgage is being paid.

**North Carolina Permit Number:** 112029

TO THE EXTENT THE FAIR DEBT COLLECTION PRACTICES ACT IS APPLICABLE, PLEASE BE ADVISED THAT THIS COMMUNICATION IS FROM A DEBT COLLECTOR AND ANY INFORMATION OBTAINED BY VIRTUE OF IT WILL BE USED TO EFFECTUATE THE COLLECTION OF THAT DEBT.